Good morning, Your Honors. I'm Bruce Paff on behalf of Joseph and Patricia Murphy, who are the plaintiffs in the underlying case. They are the petitioner in this Rule 308 petition. As Your Honors know, this is a de novo review of Judge Jeffrey Lawrence's decision on conflict of laws. What this Court has to reach is a decision as to whether Illinois has a more significant relationship with the occurrence and the parties than does Michigan. Can I ask a reading question? Yes, sir. Distinguish, if you can, this case from the case with Townsend, right? Yes, sir. In Townsend, the injured plaintiff was a child who lived in Michigan, whose father bought the lawnmower in Michigan, and the injury took place in Michigan. In this case, Joe Murphy bought the car in Illinois from an Illinois corporation, which has its sole place of business in Illinois, apparently. I hope I've... Other than the fact that the accident occurred in Michigan, what are the persuasive factors that require the application of Michigan law? Just because the accident occurred there, must we assume that ab initio Michigan law applies unless you can fit in an exception? Not really an exception, Your Honor, but there is, under the Townsend case, under Section 146, the Court looks first to where did the accident occur under Illinois conflicts law, which admittedly the collision took place in Michigan. That is not any type of strong presumption. The real test, which the Court said in Townsend, as well as in Ingersoll and Esser and Barbara Sales, all four cases from the Supreme Court, which I cited at the to the occurrence and with the parties. So if nothing is specific as to which state has a preponderance, then you go with the state where the accident occurred. That's the lesson from Townsend. But in Townsend, there were a lot of factors that argued in favor of Michigan. I would submit, Your Honor, the only factor in this case that argues for Michigan is that's where the collision took place. The defense has tried to say, well, you know, we start with a car that plaintiff pleaded had an unsafe condition because of the roof structure, et cetera. However, and they say obviously the car was designed in Michigan, but under one of the cases they've cited, Burlington Northern, the conduct of non-parties is not relevant to the conflict of law decision. Chrysler is a non-party to this appeal and to the case that will be tried out of this because of their bankruptcy. They're gone. So the fact that Chrysler designed this case in Michigan is of no moment to our conflicts analysis. Moreover, as we pointed out in our brief, factually Chrysler never tested anything to do with how this car performs in a rollover, which is our defect that we've claimed. We're not pleading that the car was defective because it rolled over. We're acknowledging Joe fell asleep at the wheel, as he did. He went into the median and had a low-speed roll, went through three quarters of a roll, the windshield flopped down, the frame flopped down, and he suffered a flexion quadriplegic injury. We're saying this car didn't protect him well in a rollover. In the testimony that we've cited from discovery, Chrysler never tested how this car performed in a rollover. So the fact that Chrysler did some testing on other aspects of the case is of no moment to our case. I don't think it's even going to be admissible, much less relevant to a conflicts analysis. Counsel, how did the affirmative defenses that are raised by Mankieri fit into the relative context of the issue? Thank you, Your Honor. One of the points that they raised is that they claim Joe and Pat both misused the vehicle and that they assumed the risk of these injuries by buying a convertible. If they assumed the risk, which we deny because they weren't told that by the way this windshield structure doesn't protect you in a roll, but if they are claimed to have assumed the car in Oak Lawn, that occurred then and there. So everything about plaintiff's transaction about buying the car and even servicing it occurred in Oak Lawn. Nothing to do with Michigan. What about his negligent conduct, though, or alleged negligent conduct? To the extent that Joe fell asleep in the wheel, that certainly occurred in Michigan. Absolutely. To the extent that the defense wants to say it has to do with him having taken a sleeping pill at the first rest stop in Michigan, I think that's random and arbitrary and there's no proof that that caused him to fall asleep. If it did, you take a step backwards and say, well, Dr. Farrell in Oak Lawn prescribed it to him. So if you want to say where did the pill come from, it came from Illinois. I honestly would say that that's not a very important fact where he took the pill because there's no proof that he was under the influence. We know he fell asleep. That's obviously if that case is proven to the jury's satisfaction, they can assign some fault, if they wish, for contributory fault. However, that is Michigan conduct, which for conflicts purposes to me should not be important. Illinois has the same laws against unsafe driving and falling asleep at the wheel as they do in Michigan. There's not a conflict on that. We don't need to look at Michigan law to talk about contributory negligence in driving a car. So I submit that that doesn't advance the analysis. On the issues that we're dealing with is what does plaintiff have to prove to prevail and what damages are recoverable? The eight points on which we differ, not one of them has to do with falling asleep at the wheel. I would ask your honors to consider one of the cases cited by the defense, the Miller v. Airdox case, which is the mine accident case. The mine was partly in Indiana, partly in Illinois. And the court was considering what law to apply on the issue of contribution. And the court ultimately decided Illinois law should apply. What they looked at, and I think their final conclusion, which is I think at 980 of the opinion, applying Indiana law would not advance any Indiana policy while at the same time undermining Illinois policy. Applying Illinois law would advance Illinois policy without underlying any Indiana policy. What are the policies at issue when a state chooses to enact laws reducing the liability of manufacturers or retailers in its state? Obviously it's to protect the defendants in that state, to protect local industry. Michigan's law was not designed to protect, I mean to the effect of Michigan's law would be to hurt an Illinois plaintiff. There's no legitimate reason for the state of Michigan to want that to occur. Illinois policy, which has uncapped damages and a fair system of tort liability in manufacturing defect cases and design defect cases, is there to protect Illinois consumers from untoward conduct by Illinois defendants. If this court were to apply Illinois law, we would be advancing the Illinois policy at no expense to Michigan's policy. Michigan's policy is to protect Michiganders and respectfully the defendant in this case shouldn't benefit by it. Thank you, Your Honor. Well, here the liability was established in Illinois when the sale was made. I agree with you, Your Honor. But for the fact that the injuries happened to occur in Michigan, that we must consider Michigan first. Exactly. If Joe had fallen asleep halfway on the Skyway or on the Indiana toll road in Indiana, we'd have the same question. It's a matter of fortuity. Was there some indication or evidence, or maybe I'm dreaming this, that Mr. Murphy would follow the same path every weekend, stop at the same location, which was in Michigan's case. The location of the accident maybe could be legitimately argued that it wasn't fortuitous. I understand the defendant's point in that regard. However, the accident could just as easily, you know, it's a three-state trip. It's only, you know, an hour and a half, but it's a three-state trip. It could have happened anywhere along the way. Your Honor is not dreaming. Joe would usually take one of a couple of routes, and he would typically stop at the rest stop at Exit 1, you know, to use the restroom, get a drink, that sort of thing. Counsel, just a point of procedure. What's the status of this case? Has it been bifurcated from the others? Yes. The Chrysler case has been severed off. That's an 06L. With the severance order, this is an 09L, so it's just plaintiff versus man carries. Only defendant? Sole defendant. So it's two Illinois plaintiffs against an Illinois defendant, which to me in Mexico, and Ingersoll, which is Illinois residents with the injuries in Iowa. Both of those Supreme Court cases were not overruled in Townsend. We shouldn't forget that.  Thank you, Your Honor. Good morning, Your Honors. Kathryn Weiler on behalf of Defendant Eppley Mancari's Chrysler Jeep. Your Honors, today we ask that the Court answer the certified question in favor of Mancari's and find that Michigan law should apply to this case. Justice Karnes, your first question is the most important question in this case. How can this case, the facts of this case, be distinguished from the Illinois Supreme Court's very clear mandate in Townsend? It can't be distinguished from Townsend. And it is essential to remember that Townsend was considering a personal injury claim under Michigan law. So any policy arguments, any claims about the appropriateness of allowing a party to recover under Illinois law versus Michigan law, those have already been ruled by the Illinois Supreme Court. They've already been rejected. It's important to know one piece of language from the Townsend decision that concerns counsel's last argument related to the policies of these states. The Illinois Supreme Court has said that characterizations such as, quote, pro-consumer or, quote, pro-business will not often appear in future choice of law cases. This is not a case in which it should be considered whether the policies of Illinois versus the policies of Michigan should control on this choice of law issue. And moving to Justice Karnes' question regarding I'm so sorry, Your Honor. No, I should be corrected. I apologize. Moving to your question, Your Honor, about the specific facts of each case, this case, as Your Honor pointed out, does involve an Illinois plaintiff. That's correct. And ManCarries is an Illinois corporation. But the allegations against ManCarries, which currently are pending, those are the failure to, that's the failure to warn claim, all relates to the conduct of Chrysler. It's how the car was designed, how the car was tested, who made decisions about warning lights, dashboard lights, how the apparatus of the convertible was actually to work. All of that was designed, created, and put into place in Michigan. It was a Michigan-designed vehicle. And it is also essential to note that although the plaintiffs do reside in Illinois, and certainly the defendants can't dispute that, it's not, as Your Honor was pointing out, a mere fortuity that this accident happened in Michigan. This isn't a situation where on the one and only time of Officer Murphy's life he decided to drive to Texas and was injured in Texas. This is a situation where every weekend Officer Murphy made this trip, every weekend he stopped at the same rest stop in Michigan. In this case, the conduct at issue, the ingestion of the sleeping pill, occurred in Michigan. The incident occurred in Michigan. That creates what is, contrary to counsel's suggestion, a strong presumption for Michigan law. And that again was addressed by the Townsend Court. There was a question in Townsend about whether there is a presumption in favor of the situs of the injury that that state's law should apply. The Townsend Court emphatically stated, yes, there is such a presumption. The local law of the state where the injury occurred should determine the rights and liabilities of the and with the parties. Counsel, can I ask you if the basis of the cause of action has anything to do with that determination? And what was the basis of the cause of action in Townsend versus the cause of action here? The basis of the cause of action in Townsend concerned an accident with a riding mower that occurred in Michigan. It was a Michigan family. And the vehicle had been purchased in Michigan. But the company, the defendant in that case, was Sears and Illinois Corporation. The riding mower was not designed in Michigan. Nothing related to the design and manufacture of the riding mower concerned Michigan. It was only the residence of the parties and the situs of the injury. But the basic cause of action was an improper design? The basis, yes, it was. It was a design defect case. That's correct. In this case, you do have an Illinois resident. That's correct. But the design defect at issue, which is the design defect in Michigan, is a design defect in Michigan. It's also important to consider the procedural posture of this case. In this case, there was a strict liability claim pending against Man Carey's. That case was dismissed under the Distributor's Act. That was appealed to this court. This court affirmed that dismissal. It went back down to the circuit court. However, plaintiff has filed a motion to reinstate that strict liability claim. That's been appealed to the circuit court. It has not been ruled on yet. So depending on the status of that litigation, we could end up in a situation where the circuit court decides to reinstate that strict liability claim. Then clearly, clearly the conduct related to the design and manufacture of that vehicle is all centered in Michigan. There can't be any question about that. So it's simply not correct to suggest that the only parties at issue in this case are Illinois parties. The only relationship to Michigan was a fortuitous or unfortunate event that occurred in Michigan. This is a case that is strongly centered in Michigan. And because of that, Michigan law should be the law in this case. It's also necessary to consider the fact that when you look at the elements required under the choice of law analysis, again, there needs to be a showing of a more or greater significant relationship to another state other than Michigan in this case. That has not been established in this case. The four practical considerations identified by Section 145 of the restatement are place where the injury occurred. Here there's no dispute. The injury occurred in Michigan. Place where the conduct causing the injury occurred. Here the conduct allegedly causing the injury was the failure to warn in that vehicle. It was the design, manufacturer, failure to warn, all decisions made in Michigan, whether there was an owner's manual, whether there were dashboard lights, whether there were warning lights. So that favors Michigan. There wasn't a warning to be communicated in Illinois when it was purchased? Well, the manufacturer of the vehicle advises the seller of the vehicle how that vehicle is to be treated. That's the failure to warn suggestion. So by that I suggest that the manufacturer makes the determination about what information is included in the owner's manual, whether there are warning stickers on the car itself. Those decisions are made by the manufacturer and communicated to the dealership. The dealership at that point does have an obligation to pass along those warnings. In this case, the manufacturer made the decisions about warnings and those are the warnings that are in dispute in this case. But those are the warnings communicated at the point of sale in Illinois? They would be ultimately communicated at the point of sale, but the dealership did not make those decisions. The manufacturer made those decisions, communicated those decisions to the dealership. Irrespective of who made those decisions, under products liability law, anyone involved in the chain of commerce is liable. In a strict liability claim. That's correct, Your Honor. And so it needs to be looked to exactly how those decisions are made. Certainly a distributor of a vehicle wouldn't be the distributor be held liable under Illinois products law? Yes. But that's not the analysis that we are looking at for choice of law. The analysis we're looking at is ultimately who made those decisions. And in this case, the entity that made those decisions was Chrysler in Michigan. So is there any liability on the duty to warn to the distributor? There is because of the negligence allegations in this case. Certainly we dispute, meaning the defendants dispute, that there is any liability in this case. But the arguments made by the plaintiffs suggest, yes, you are liable because of your decision to distribute this car, your decision to sell this car, your negligence in selling this car that was negligently designed. That's the allegation of liability in this case. And if you bring in the strict liability claim, that motion which is pending in the circuit court hasn't been ruled on yet, then it's even more clear that this is but one link in the chain of this vehicle in this stream of commerce. That's what leads back into a determination of who made those decisions, as Your Honor is suggesting. And it's clear that those decisions were made by Chrysler in Michigan. So that's the second practical consideration under Section 145. That favors Michigan. The final two are, one concerns domicile residence, nationality, place of business of the parties. Although certainly it is true that the Murphys are residents of Illinois, again, it's important to remember this wasn't a one-time trip through Michigan. This was every weekend to the summer home or the weekend home that they had owned for 27 years that was in Michigan. And then finally, the place where the relationship between the parties is centered, here it's both Michigan and Illinois. The vehicle was purchased in Illinois. They are residents of Illinois. But the use of the vehicle at the time of this incident was in Michigan. The vehicle was designed and manufactured in Michigan. With those practical considerations in mind, there is not a clear greater relationship to Illinois law versus Michigan law. And because that hurdle cannot be overcome, Michigan law should apply in this case. If there are no further questions, we ask that this Court agree with the Circuit Court's findings. Thank you very much, Counsel. Your Honor, if I might. Counsel made a comment completely unfounded in the record. I believe she said, the manufacturer makes all decisions about warnings that are to be given to the consumer, and all those decisions are made in Michigan. There is no record reference to that. It's not cited in the briefs, and it's not the fact. What we have pleaded, and it's in the supporting record at page C-143, we have sued Main Carries for negligent failure to warn that the vehicle provided no protection to a belted occupant in a rollover, be it in the form of a strong windshield frame, be it in the form of a pop-up roll bar, or otherwise. That's what we have pleaded. That has nothing to do with what the Owner's Manual chooses to say about lights and how the convertible works. That is all irrelevant. What we have is an absence of evidence that Main Carries provided any warning. And if your Honors happen to notice the record, there is a Main Carries witness who gave testimony. No warning to that effect was given. The Murphys received no warnings about this vehicle will not provide protection in a low-speed rollover or a rollover of any kind. The windshield comes down in the rollover. They were not advised of that. Joe's testimony was he thought that the windshield frame provided protection like a roll bar.  The counsel also told the court that you should not consider the relevant policies of the forum as to whether or not something, and took a line from Townsend, whether something is pro-business or pro-consumer. Recognizing that comment in Townsend, however, that ignores other language in Townsend, particularly at page 159, as well as the restatement section 6, which among the seven factors this court is to consider are the relevant policies of the forum. How does Illinois express its policies? Constitution, laws, moors, and customs. What are the laws? We don't believe in caps on damages according to our Supreme Court. We don't believe in other things. Those are expressed in our laws. To evaluate the policies of the forum state to decide, we need to look at what the policies are in the laws. And as the 1912 case that I cited to your honors, which has never been reversed, the Nonotuck Silk case said, your honors can refuse to enforce out-of-state law that is repugnant to Illinois moors and policies and public policy. And that also applied to the gambling cases, which I've cited to the court. Counsel pointed out gambling is now okay in Illinois. It doesn't reverse the findings of those cases, which is Illinois courts do not enforce out-of-state laws that are repugnant to our moors. Lastly, Townsend did not address the eight differences in Illinois law that we're addressing in this case. Through whatever choice counsel made in that case, they only raised three differences in Illinois law. Two are the same. Strict liability, cap on non-economic damages. The third one that they addressed there was the availability of punitive damages against a manufacturer. Under Michigan law, you don't have any. Illinois law, you do. That has nothing to do with our case. This is a purely compensatory damage case. So we're dealing with six other factors of Illinois law that Townsend didn't even touch upon for whatever reason. Those are all the points I wish to address and rebuttal unless your honors have further questions. Is it really of significance that he always took this route or this trip to Michigan on weekends? I think not. I mean, if this happened, let's say for some crazy reason they decided to go through Wisconsin and across down Mackinac and that way. This could have happened in Wisconsin. It could have. And you'd kind of look at Joe and think he was crazy for taking that route. But still, there's no reason he couldn't have. I think the choice of the route is not important. And the fact that he had a house there is also not important in light of the case involving our recently elected mayor. Thank you. Thank you, your honor. Thank you very much. The mayor will be taken under advisement.